UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                 :
GARY HARRIS,                     :
                                 :
          Plaintiff,             :    Civ. No. 14-460 (NLH)(JS)
                                 :
     v.                          :    OPINION
                                 :
CHRISTOPHER HOLMES, et al.,      :
                                 :
          Defendants.            :
_____:

APPEARANCES:

Gary Harris, No. 283029
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302
     *Plaintiff pro se*

Gregory R. Bueno, Esq.
Suzanne Marie Davies, Esq.
Office of the Attorney General
25 Market Street
Trenton, NJ 08625
     *Counsel for Moving Defendants*

<u>HILLMAN</u>, District Judge

     Plaintiff, Gary Harris, appearing <u>pro</u> <u>se</u>,[1] is in the custody

of the New Jersey Department of Corrections ("NJDOC") and

currently incarcerated at South Woods State Prison ("SWSP") in

Bridgeton, New Jersey.  Plaintiff claims that Defendants have

violated his rights under the First and Fourteenth Amendments of

the U.S. Constitution by not providing him with hot meals and

_____
[1] The Court appointed pro bono counsel to represent Plaintiff.
<u>see</u> ECF No. 71.  Plaintiff later terminated that relationship.
<u>See</u> ECF Nos. 77, 79, 80.

1

adequate food during Ramadan, failing to accommodate sufficient prayer time and provide prayer oil, preventing him from wearing religious attire, and harassing him during 2012 and 2013.[2]

Presently before the Court is the Motion for Summary Judgment of Defendants Marcus Hicks, Christopher Holmes, Gary Lanigan, Bettie Norris and Maggie Silva (the "Moving Defendants"),[3] which is ripe for adjudication.[4]  ECF No. 91.  For the reasons that follow, the Court will grant the Motion.

## I.    Factual Background

Plaintiff Gary Harris commenced this action by submitting a Complaint to the U.S. District Court for the District of New Jersey.  ECF No. 1.  Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for (1) violation of the First Amendment's Free

---

[2] Because Plaintiff has brought claims pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

[3] At all times relevant to the Complaint: Hicks was director of the Office of Community Programs and Outreach Programs at NJDOC, ECF No. 1, ¶ 10; Holmes was an administrator of SWSP, ECF No. 1 ¶ 5; Lanigan was the Commissioner of NJDOC, ECF No. 1, ¶ 3; Norris was Director of Operations for NJDOC, ECF No. 1, ¶ 14; and Silva was the supervisor of the Office of Chaplain Services for NJDOC, ECF No. 1, ¶ 11.  All except Holmes maintained their offices in Trenton and not at SWSP.

[4] Plaintiff has failed to serve Defendants Farsi, Lanoza, Bolden, and Easely.  See ECF Nos. 11, 18.  In addition, although it appears that Defendants Selby, Ramano, Marcucci, Yusef, and Moyer were served, see ECF No. 19, none of those defendants have appeared in this litigation.

Exercise Clause; and (2) denial of Equal Protection in violation

of the Fourteenth Amendment against Hicks, Holmes, Lanigan,

Norris and Silva as well as defendants Mark Farsi, Greg Lanoza,

Mack Selby, Mark Ramano, John Marcucci, Dr. Yusef, Reverend

Moyer, Kevin Bolden, Easely, and John Does 1-10.[5]  Id., ¶¶ 3-17,

33-36.  According to the Complaint, Plaintiff sues the

defendants in both their official and individual capacities.[6]

---

[5] Plaintiff asserts in his opposition brief that he is bringing
claims pursuant to the Religious Land Use and Institutionalized
Persons Act of 2000, 42 U.S.C. § 2000cc et seq., and the Eighth
Amendment.  ECF No. 94 at 4.  Neither claim is alleged in the
Complaint, which only raised First and Fourteenth Amendment
claims under 42 U.S.C. § 1983.  See ECF No. 1.  In screening the
Complaint, the Court identified a claim pursuant to 42 U.S.C. §
1983 and allowed that claim to proceed.  See ECF No. 6.
Plaintiff filed a Motion for Extension of Time to file a Motion
to Amend the Complaint along with a proposed amended complaint.
ECF Nos. 29, 31.  The Court granted Plaintiff's request and
issued an order providing that "[t]he deadline to file motions
to amend pleadings is extended to May 16, 2016."  ECF No. 35.
Plaintiff, however, never filed a motion to amend the Complaint
after receiving leave of court to do so.  There is thus no
RLUIPA or Eighth Amendment claim before the Court.  The Court
notes, however, that even if the proposed amended complaint were
properly filed and before the Court, such a complaint would be
dismissed because it lacks allegations of personal involvement
by the defendants or any involvement alleged is limited to the
sort for which liability will not lie, i.e. the receipt of or
failure to respond to a grievance, report, appeal, or letter.
See infra at 19.  Further, as to the request for injunctive
relief against the proposed new defendant Rasul Suluki, a former
employee of the NJDOC, the Court would be unable to grant
injunctive relief against Mr. Suluki, as he is no longer
employed by the NJDOC.

[6] The Moving Defendants argue that the claims brought against the
defendants in their official capacities are barred by the
Eleventh Amendment or because they are not "persons" subject to
suit under § 1983.  ECF No. 91-1 at 5-6.  Although the Eleventh

Id. at 1.  Plaintiff seeks declaratory and injunctive relief,
compensatory damages, punitive damages, and reasonable costs.[7]
Id., ¶ 40.

Plaintiff alleges that the Defendants violated his
Constitutional rights with respect to his adherence to the
Islamic faith.  Plaintiff categorizes the Defendants' alleged
wrongdoing pursuant to his religious beliefs as the (1) failure
to provide hot meals and adequate food; (2) failure to
accommodate sufficient prayer time and prayer oil; and (3)
failure to permit donning of kufi caps during prison recreation.

---

Amendment bars suits for monetary damages and certain types of
injunctive relief against state defendants in their official
capacities, it does not bar prospective injunctive relief.  See
Edelman v. Jordan, 415 U.S. 651, 666-67 (1974).  The same
analysis applies to the Moving Defendants' argument that they
are not "persons" subject to suit under § 1983.  See Will v.
Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989).
Because the Court will grant judgment as a matter of law in
favor of the Moving Defendants without regard to the nature of
their status as defendants, the Court need not consider whether
Plaintiff is requesting prospective injunctive relief or
otherwise address this issue.

[7] The Moving Defendants argue that the Prison Litigation Reform
Act ("PLRA") precludes compensatory damages because Plaintiff
has suffered no physical injury.  See ECF No. 91-1 at 27-28
(citing 42 U.S.C. § 1997e(e)).  The PLRA requires that "a
prisoner demonstrate physical injury before he can recover for
mental or emotional injury."  Mitchell v. Horn, 318 F.3d 523,
533 (3d Cir. 2003).  It, however, does not, "limit a prisoner's
ability to obtain nominal or punitive damages."  See id. at 533.
Because the Court will grant judgment in favor of the Moving
Defendants, the Court need not address whether it should
liberally construe Plaintiff's request for damages as requesting
nominal damages or whether Plaintiff has otherwise sustained his
burden to move forward on his damages claims.

Id., ¶¶ 18-31.  Plaintiff alleges that these violations occurred in 2012 and 2013.

At all times relevant to this action, Plaintiff has been incarcerated at SWSP in Bridgeton, New Jersey, a correctional facility owned and operated by NJDOC.  ECF No. 91-2, ¶ 13. Plaintiff is an adherent of the Islamic faith and has considered himself Muslim throughout his incarceration.  Id., ¶ 14. Plaintiff identifies as a follower of Sunni Islam.  Id., ¶ 15.

## A.    Religious Dietary Restrictions

Plaintiff asserts his belief that according to the Islamic faith, he must follow certain dietary restrictions year round. Id., ¶ 16.  These include complete restrictions on eating pork, drinking alcohol, and use of drugs.  Id., ¶ 16.  In addition to general dietary restrictions described above, Plaintiff also stated there are specific dietary restrictions associated with the holy month of Ramadan.  Id., ¶ 17.  Specifically, Plaintiff testified that he is required to fast during Ramadan.  Id. Plaintiff describes the fasting practices during Ramadan as follows:  Once the "Fajr prayer" (dawn) prayer "comes in," Plaintiff is not to consume any foods or liquids until night time.  In essence, Plaintiff must fast completely from one hour before sunrise until sunset.  Id., ¶¶ 18-19.

Plaintiff explains that some Muslims are excused from the Ramadan fast, like those who are on medications, are too old,

have a disability, or otherwise would endure a hardship if they had to fast. ECF No. 91-4, Dep. at 33. Plaintiff identifies no other dietary requirements as part of his religion or for the practice of Ramadan. Plaintiff does not claim that having the same caloric intake during fasting days as during non-fasting days is required or suggested by, or indeed in any way related to, the Islamic faith.[8] ECF No. 91-2, ¶ 57.

Before Ramadan in 2012, Defendant Hicks, who at the time served as the Director of the NJDOC's Office of Community Programs and Outreach Services, issued a memorandum to all the prisons' administrators regarding preparation for Ramadan. In this memo, he instructed the facilities that:

> a. Inmates participating in Ramadan should be provided the standard meal package for breakfast and dinner as provided to the general inmate population and should be diversified as much as possible.

> b. Ritualistic elements should be provided equally for all approved religious services throughout the NJDOC. Defendant Hicks also instructed the facilities that the purchasing of dates "is the appropriate and required food provision for those observing Ramadan."

> c. Movement schedules and meal schedules are to be made available and distributed to "all appropriate custody

---

[8] On September 4, 2013, non-defendant SWSP Associate Administrator Derick Loury issued an inter-office memorandum regarding the provision of meals during Ramadan in 2013. ECF No. 91-2, ¶ 54. In this memo, Loury quotes Chapter 2, Revelations 185 of the Qu'ran, and states that "[n]o where in the tenets of the faith does it indicate that fasting means receiving the same amount of food you would normally eat in a twenty-four hour period." Id., ¶¶ 55, 56. Plaintiff offers no evidence to rebut this basic assertion.

and civilian staff that are involved in the preparation and oversight of Ramadan observance in order to avoid any possible delays or discrepancies in services."

Id., ¶ 22. On July 11, 2012, non-moving Defendant SWSP Food Service Supervisor Mark Ramano issued an inter-office memorandum to all food service staff regarding food preparation during Ramadan. Id., ¶ 24. This memo directed food service staff to deliver breakfast 20 to 30 minutes before meal time. Id. It also directed staff to deliver the dinner meals at approximately 6:00 to 6:30 p.m. Id., ¶¶ 23-24. Ramano ordered that at service time, the hot portions of meals will be placed in aluminum trays, while the cold portions will be placed in a hinged tray. Id., ¶ 25. The memo also addressed food temperature control. Specifically, Ramano ordered that the aluminum trays be placed on steam tables with approximately a half inch of water and the control dial to be set no higher than "3". Id., ¶ 26. The cold portions of the meal (hinged trays) were ordered to be placed in the milk dispensers until distribution time. Id., ¶ 27.

This memo also confirmed that during preparation for Ramadan, a meeting was held between Dr. Yusef (chaplain), Food Services and the SWSP Administration. Id. At that meeting, it was decided that even though it was not required, Food Services would provide the additional foods for the express purpose of making up the calories lost without being served lunch (which

cannot be served to Muslim inmates due to their fasting).  Id.,
¶ 29.

Plaintiff testified that from approximately July 20 to
August 19, 2012, and July 11 to August 9, 2013 (Ramadan in 2012
and 2013, respectively), Food Services gave him as part of his
dinner "two slices of bread" and did not give him enough food to
make up for the calories lost from not being able to eat lunch
(a loss he attributes to the Ramadan fast) as part of his
dinner.  Id., ¶ 20.  During Ramadan in 2012 and 2013, however,
Plaintiff and the Muslim population received the standard
breakfast and dinner packages, which included a rotating menu
for both breakfast and dinner.  Id., ¶ 30.

In addition to being afforded the standard breakfast and
dinner menus, the Muslim population at SWSP, including
Plaintiff, was given two slices of bread, two servings of peanut
butter, two servings of jelly, and was served cold cereal in
place of hot cereal.  Id., ¶ 31.  Plaintiff expressed his
personal distaste for the aforesaid combination of food
provided.  Id., ¶ 21.  Plaintiff states that he would have liked
a "double tray" at dinner.  ECF No. 91-4, Dep. at 38.  None of
the named Defendants played any role in preparing Plaintiff's
food at any time period relevant to the litigation.  ECF No. 91-
2, ¶ 40.

During Ramadan in 2012 and 2013, Plaintiff received his breakfast meals at about 3:00 a.m., whereas the general population inmates would receive their breakfast meals around 5:00 a.m. Id., ¶ 35. Plaintiff would receive hot water in the morning during Ramadan.[9] Id., ¶ 36. During Ramadan, as during the rest of the year, however, Plaintiff would buy additional food from the commissary. ECF No. 91-4, Dep. at 41. Plaintiff encountered difficulty preparing the food he purchased at the commissary, which sometimes requires hot water, because hot water was not provided during Ramadan in 2012 and 2013 in the evening. Id. at 42-43. Plaintiff states that since then, hot water has been provided. Id. at 44.

Plaintiff testified that his body went through changes during the month of Ramadan due to dietary restrictions. ECF No. 91-2, ¶ 38. Plaintiff did not seek any medical assistance for these symptoms. Id., ¶ 39.

In response to questioning about how, in his view, his exercise of his Islamic beliefs was frustrated by the kinds of meals provided or in what instances hot water was provided, Plaintiff testified that he felt disrespected that he was not being given access to hot water. Id., ¶ 41.

---

[9] As of Ramadan 2016, Plaintiff now receives hot water with both the morning and evening meals. Id., ¶ 63.

**B.    Access to Prayer Time, Prayer Oil, and Kufis**

Plaintiff testified that both during Ramadan and non-Ramadan days, there have been instances where non-defendant corrections officers in "Facility 3" have told him that he is not allowed to pray in the recreation yard.  Id., ¶ 43. Plaintiff states that since October 2015, he has been housed in "Facility 1," where he has not had any issue with getting sufficient prayer time.  Id., ¶ 42.

Plaintiff admits that Defendants Silva and Norris are completely uninvolved in Plaintiff's claims regarding the ability to pray, id., ¶ 44, and that none of the Defendants directed corrections officers to interfere with Plaintiff's prayers.  Id., ¶ 46.

Plaintiff testified that he wrote to Defendants Holmes and Lanigan about "the conditions . . . that were happening at the Jumuah [prayer] services and about praying in the yard."  Id., ¶ 45.  Plaintiff states that he directed correspondence to Defendants Holmes and Lanigan about "Muslims congregating . . . Muslims being able to pray in the yard . . . Muslims not being able to wear kufis [religious headwear] . . . ."  He states that after submitting this correspondence, he is now allowed to wear kufis.  Id., ¶ 47.  According to Plaintiff, receiving these letters or grievances is the only involvement by Defendants

Holmes and Lanigan with regard to his prayer time and kufi claims. Id., ¶ 48.

No fact establishes that any named defendant created or enforced a policy or directive, or otherwise participated in or ordered anyone else to participate in, any restrictions on Plaintiff's ability to pray in the recreation yard or elsewhere. Id., ¶ 49. As of the date of Plaintiff's deposition, he is allowed to wear a kufi. Id., ¶ 64.

Plaintiff testified that in either 2012 or 2013, both during Ramadan and at other unspecified times, he was not allowed to retain prayer oil as part of his personal property. Id., ¶ 50. In 2012 and 2013, however Plaintiff had access to prayer oils through the prison chaplain. Id., ¶ 51. Despite being asked to explain each Defendant's involvement with regard to the allegations about prayer oils, Plaintiff provided no such explanation. Id., ¶ 53. He testified that he wrote to some unidentified administrators regarding the oils. ECF No. 91-4, Dep. at 81. In addition, Plaintiff stated in his deposition that the prayer oil issue is likely moot because the oils would soon be available at the commissary. Id. at 80. Since October 7, 2016, NJDOC inmates have been permitted to purchase prayer oil at prison commissaries and keep it in their cells. ECF No. 91-2, ¶ 65.

### C. Harassment

Plaintiff testified that he was wrongfully identified as a gang member i.e., designated as being part of a Security Threat Group ("STG") in October 2006.  Id., ¶ 59.  Plaintiff is not identified in the NJDOC face sheet system as a member of a STG. Id., ¶ 58.  Despite testifying extensively about his placement on STG and his efforts to have this status revoked, Plaintiff cannot identify any act of harassment carried out directly by any of the Defendants.  Id., ¶ 60.  No named Defendant directed anyone to harass Plaintiff as a result of his being identified as a STG member.  Id., 61.  The purported harassment is unrelated to Plaintiff's religious beliefs.  Id., ¶ 62.

## II.  Standard of Review

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id. at 250.  The Court should view the

12

facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor.  Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a genuine issue concerning any material fact.  See Celotex Corp. v. Carrett, 477 U.S. 317, 323 (1986).  Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson, 477 U.S. at 257. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251).

If the court determines that "the record taken as a whole could not lead a rational trier or fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

A thorough and comprehensive review of the docket makes clear that no material fact is in dispute as to the dispositive issues in this case. Much of the undisputed facts are provided by Plaintiff in his deposition testimony. Although he attempts to refute his own sworn deposition testimony by declaration, <u>see</u> ECF No. 95, the use of such a declaration to dispute a litigant's own sworn testimony is precluded by the sham affidavit doctrine. <u>See</u> <u>Baer v. Chase</u>, 392 F.3d 609, 624 (3d Cir. 2004) (A party "may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict."). Here, Plaintiff presents no explanation for the conflicting testimony. As such, summary judgment is appropriate.

## III. Discussion

Plaintiff has brought his constitutional claims pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the

Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)).

"A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007). See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Further, supervisory liability cannot be imposed under § 1983 by respondeat superior. See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976); Durmer v. O'Carroll, 991 F.2d 64, 69 n.14 (3d Cir. 1993). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Iqbal, 556 U.S. at 677. A plaintiff must show that an official's conduct caused the deprivation of a federally

protected right.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985); Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970) (A plaintiff "must portray specific conduct by state officials which violates some constitutional right.").

**A.   First Amendment Free Exercise Claim**

The First Amendment prohibits the government from burdening the free exercise of religion, but the First Amendment is only implicated if the governmental burden on religion is "substantial," which essentially means that the state may not compel an individual to act contrary to his religious beliefs. Anspach v. City of Phila., Dep't of Public Health, 503 F.3d 256, 272 (3d Cir. 2007).  The Supreme Court has defined a "substantial burden" as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas v. Review Bd. Of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981).

Although inmates retain First Amendment rights, those rights are not without reasonable limitations.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security."  Id.

"The mere assertion of a religious belief does not automatically trigger First Amendment protections." <u>DeHart v. Horn</u>, 227 F.3d 47, 51 (3d Cir. 2000). Rather, only "those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." <u>Id.</u> "[I]f a prisoner's request for a particular diet is not the result of a sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor that request . . . . It is in this way that prisons are protected from random requests for special diets by inmates who alleged dietary restrictions are not the result of their religious convictions but rather their secular predilections." <u>Id.</u>

### 1.   **Ramadan Dietary Restrictions**

No rational factfinder could conclude on this record that Plaintiff's religious beliefs about fasting during the period of Ramadan, which Court accepts as sincere, have been substantially burdened by any moving defendant.[10] Specifically, it is undisputed that Plaintiff's belief is that he must fast from approximately one hour before sunrise until sundown during the month of Ramadan. Plaintiff admits that he was not prevented from doing this, and that his meals were provided at least one

---

[10] The allegations regarding the purported failure to provide hot meals and adequate food are raised against defendants Hicks, Holmes, Silva, and Norris. ECF No. 1, ¶¶ 18-19, 23.

hour before sunrise and then after sundown during Ramadan.
Plaintiff admits that he received sufficient and adequate food
during Ramadan, including additional food at the dinner meal to
make up for the missed lunchtime meal.

While Plaintiff contends he was frustrated when he did not
receive hot water at dinner to make food that he purchased at
the commissary and would have preferred not to receive peanut
butter and jelly, his concerns, even if true, are not legally
material.  Plaintiff fails to establish how the provision of hot
water is integral to his ability to practice his sincerely held
belief of fasting during Ramadan, or how the provision of peanut
butter and jelly substantially burdens his beliefs.

Nor does Plaintiff state that, as a sincerely held
religious belief, he must have the same caloric intake during
fasting days as during non-fasting days as part of the Islamic
faith.  Id., ¶ 57.  Because the undisputed facts demonstrate
that Plaintiff cannot establish a substantial burden on any
sincerely held religious belief as it relates to his dietary
restrictions during Ramadan, the Court will enter judgment in
favor of the Moving Defendants and against Plaintiff on this
issue.

### 2.  Prayer Time

The Court also concludes that Plaintiff's religious beliefs
regarding participating in prayer time have not been

substantially burdened by the named defendants in this lawsuit. Specifically, Plaintiff admits that non-defendant corrections officers were the persons who may have prevented him from participating in certain prayers during his recreational time. Plaintiff admits that none of the named defendants prohibited him from participating in his prayers or directed the non-defendant corrections officers to interfere with his prayers.[11]

With regarding to Defendants Holmes and Lanigan, Plaintiff testified that their only involvement in his prayer time claim was related to the filing of grievances. Receiving a grievance, responding to it, or not responding to it is not sufficient personal involvement to create § 1983 liability. "Permitting supervisory liability where a defendant, after being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement. Allowing only a letter sent to an official to be sufficient to impose supervisory liability would permit an inmate to subject defendants to potential liability in any case in which the prisoner merely transmitted correspondence to the official." See, e.g., Iaccarino v. Grace, No. 06-cv-63, 2006

---

[11] Plaintiffs admits that Moving Defendants Silva and Norris are uninvolved in Plaintiff's prayer claims.

U.S. Dist. LEXIS 9444, *3 (M.D. Pa. Jan. 25, 2006) (citing Rizzo
v. Goode, 423 U.S. 362 (1976), and other cases).

Because the undisputed facts establish that none of the
named defendants were personally involved in any alleged
deprivation of prayer time, Plaintiff has failed to establish a
claim against them and the Court must enter judgment in favor of
the Moving Defendants and against Plaintiff on this issue.

### 3. Access to Prayer Oils

Plaintiff states that he was prevented from retaining
prayer oil as part of his personal property and keeping it on
his person. During 2012 and 2013, however, Plaintiff admits
that he had access to the religious oils through the prison
chaplain, and that the religious oils are now sold in the
commissary. Plaintiff identifies no sincerely held religious
belief that would require him to keep prayer oils on his person
or to have continuous access to them, and further, Plaintiff
admits that this issue may now be moot because the oils can be
purchased at the commissary.

When asked to explain how each named defendant was involved
in the religious oil issue, Plaintiff could provide no such
explanation, and therefore, it appears that the Moving
Defendants have no personal involvement in any alleged
constitutional violation arising from access to religious oils.

Plaintiff stated that he filed prison grievances with certain non-defendant administrators — not any of the named defendants.

Even if Plaintiff could establish that a sincerely held religious belief to retain religious oil on his person was substantially burdened, none of the named Defendants had any personal involvement in that burden, and for the reasons stated supra, judgment must be entered in favor of the Moving Defendants and against Plaintiff on this issue.

### 4. Religious Attire

Plaintiff's alleged sincerely held religious belief regarding the donning of kufis during recreation time has not been substantially burdened by the named defendants in this lawsuit. Plaintiff alleged that he was sometimes encumbered from donning his kufi during recreation time. First, Plaintiff has failed to demonstrate that wearing a kufi during recreation time is a sincerely held religious belief. Second, Plaintiff states that this issue is now moot because he is allowed to wear a kufi during recreation time. Finally, Plaintiff admits that none of the named defendants prevented him from wearing a kufi in the recreation yard and identifies only non-defendant corrections officers as causing that temporary prohibition.

Even if Plaintiff could establish that his alleged sincerely held religious belief to wear a kufi during recreation time was substantially burdened, none of the named Defendants

had any personal involvement in that burden, and judgment must be entered in favor of the Moving Defendants and against Plaintiff on this issue.

### 5. Harassment

Plaintiff originally alleged that Defendants Holmes and Lanigan subjected Plaintiff to threats and assaults by gang members and prison staff because he was allegedly listed on a Security Threat Group list. Plaintiff admits, however, that neither Defendants Holmes nor Lanigan harassed or directed another to harassed him, and that the alleged harassment is unrelated to his religion and beliefs. Plaintiff states that he wrote to Defendants Holmes and Lanigan to be removed from the list; however, such a fact is insufficient to establish § 1983 liability against them.

Because the Moving Defendants are not personally involved in any alleged harassment (to the extent that Plaintiff has even plausibly alleged a constitutional violation), and because any such alleged harassment is unrelated to Plaintiff's religion and exercise of religious beliefs, the Court will enter judgment in favor of the Moving Defendants and as against the Plaintiff on this issue.

### B. Fourteenth Amendment Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its

jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985) (citing <u>Plyler v. Doe</u>, 457 U.S. 202, 216 (1982)). To state an equal protection claim, a plaintiff must allege that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class, such as religious affiliation. <u>See</u> <u>id.</u>; <u>Mack v. Warden Loretto FCI</u>, 839 F.3d 286, 305 (3d Cir. 2016).

Generally, prison officials cannot discriminate against inmates of different religions. <u>Cruz v. Beto</u>, 405 U.S. 319 (1972). An inmate cannot obtain relief if the difference between the defendants' treatment of him and their treatment of [inmates of another religion] is 'reasonably related to legitimate penological interests.'" <u>DeHart</u>, 227 F.3d at 61.

Plaintiff makes no allegation in his Complaint or provides any fact to establish that any similarly situated individual was treated differently than he was treated, nor does he identify an impermissible consideration that purportedly played a part in the challenged decision in this case.[12] Like his First Amendment

---

[12] Plaintiff, for the first time, argues in his opposition brief that "Jewish inmates are given all three of their normally

23

claims, Plaintiff fails to identify any personal involvement by any named defendant that would subject them to § 1983 liability for any alleged equal protection violation. For these reasons, the Court will grant judgment in favor of the Moving Defendants and against Plaintiff.

### C. Dismissal of Non-Served Defendants

Plaintiff has failed to effect service on Defendants Farsi, Lanoza, Bolden, and Easley. <u>See</u> ECF Nos. 11, 18. A plaintiff in a civil action in federal court must complete service of his complaint within 120 days of filing or within a period prescribed by the District Court. <u>See</u> Fed. R. Civ. P. 4(m); <u>Mathies v. Silver</u>, 450 F. App'x 219, 221 (3d Cir. 2011) (affirming district court's dismissal of action in which plaintiff failed to effect service). If the plaintiff fails to complete service within the specified time, Rule 4(m) requires the Court to determine whether the plaintiff has shown good

---

allotted meals at the time of breaking the fast when they observe their holidays." ECF No. 94. But, "it has been settled law that an inmate cannot state an equal protection claim by pointing to some instance where the prison accommodated some other religious practice — or even the same religious practice by another religious group — and demanding an identical accommodation." <u>Small v. Wetzel</u>, 12-cv-83, 2014 WL 295714, *2 (W.D. Pa. Jan. 24, 2014) (citing <u>Cruz v. Beto</u>, 405 U.S. 319, 322 n.2 (1972)). Moreover, Plaintiff provides no factual support for his allegation and furthermore, fails to provide any facts to demonstrate any defendant's personal involvement in such an alleged violation even if one occurred.

cause for the failure.  See <u>Mathies</u>, 450 F. App'x at 221; <u>Boley</u>

<u>v. Kaymark</u>, 123 F.3d 756, 758 (3d Cir. 1997).

The Court finds that Plaintiff has not demonstrated good

cause for the failure to serve these defendants.  Specifically,

Plaintiff knew of his failure to serve these defendants, <u>see</u> ECF

Nos. 11, 18, failed to ask the Court for an extension of time in

which to serve the defendants, and has failed to prosecute the

claims alleged against these defendants.

In such circumstances, the district court may either

dismiss the claims against the defendants or grant a

discretionary extension.  See <u>Mathies</u>, 450 F. App'x 221; <u>Boley</u>,

123 F.3d at 758; <u>see</u> <u>also</u> D.N.J. Local R. 41.1(a) (providing for

<u>sua</u> <u>sponte</u> dismissal of civil actions for want of prosecution).

The Court will dismiss without prejudice the claims against

these defendants.  If Plaintiff believes he has good cause for

his failure to serve these defendants, Plaintiff may within

thirty (30) days file a written statement which sets forth

detailed arguments to demonstrate good cause for consideration

by the Court along with a request to reinstate the defendants

who have not been served and effect service.

### D.   Failure to Prosecute Served Defendants

Plaintiff named in the Complaint and served Defendants

Selby, Ramano, Marcucci, Yusef, and Moyer.  See ECF No. 19

(summons returned executed as to these defendants).  These

defendants have never appeared or participated in this litigation. Despite this, however, Plaintiff has failed to move for a default or default judgment against them or made any attempt to prosecute this action against them since they were served over three years ago. Therefore, pursuant to Local Rule 41.1(a), the Court will provide notice of its intent to dismiss these defendants without prejudice unless good cause is shown by affidavit or declaration. See D.N.J. Loc. R. 41.1(a).

## IV. Conclusion

The Court will grant the Moving Defendants' Motion for Summary Judgment and enter judgment in the Moving Defendants' favor and against Plaintiff, dismiss without prejudice the action against Defendants Farsi, Lanoza, Bolden, and Easley for failure to effect service, and issue a notice to Plaintiff of the Court's intent to dismiss without prejudice Defendants Selby, Ramano, Marcucci, Yusef, and Moyer for failure to prosecute pursuant to Local Rule 41.1(a).

Plaintiff may file within thirty (30) days an affidavit or declaration demonstrating good cause for his failures to serve and prosecute this action against the aforementioned defendants.

An appropriate order follows.


Dated: January 23, 2019            s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.